UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CRYSTAL VIVODA,

      Petitioner,                              Case No. 09-CV-11747

v.

                                          HON. AVERN COHN

SUSAN DAVIS,

      Respondent.

_____/

**MEMORANDUM AND ORDER**
**DENYING PETITION FOR WRIT OF HABEAS CORPUS**
**AND**
**DENYING A CERTIFICATE OF APPEALBILITY**
**AND**
**DISMISSING CASE**

**I. Introduction**

This is a habeas case under 28 U.S.C. § 2254.  Petitioner Crystal Vivoda

(Petitioner) is a state inmate at the Huron Valley Women's Complex in Ypsilanti,

Michigan, where she is serving a sentence of six years, nine months to fifteen years for

armed robbery, Mich. Comp. Laws § 750.529; six years, nine months to fifteen years for

assault with intent to rob while armed, Mich. Comp. Laws § 750.89; and one to four

years for assault with a dangerous weapon, Mich. Comp. Laws § 750.82.  Petitioner has

filed a pro se petition for writ of habeas corpus claiming that she is incarcerated in

violation of her constitutional rights.  Petitioner specifically claims that the evidence is

insufficient to support her convictions.  Respondent, through the Attorney General's

Office, filed a response, arguing that petitioner's claim is without merit.  For the reasons

which follow, the petition will be denied, a certificate of appealability will be denied, and

the case will be dismissed.

## II.  Procedural History

Petitioner was convicted following a jury trial in the Wayne County Circuit Court,

in which she was tried jointly with her co-defendants Danny Levell Blount and Tyrone

Lavell Hudson.

Petitioner filed an appeal of right to the Michigan Court of Appeals, presenting

the claim that she raises in the instant petition.  The Michigan Court of Appeals affirmed

petitioner's conviction and sentence.  People v. Vivoda, No. 271292 (Mich.Ct.App.

December 27, 2007).  Petitioner filed an application for leave to appeal in the Michigan

Supreme Court in which she raised the same issue that she had raised in her appeal of

right.  The Michigan Supreme Court denied petitioner leave to appeal.  People v.

Vivoda, 481 Mich. 878 (2008).

Petitioner seeks habeas relief on the following ground:

> I. The evidence was insufficient for defendant's convictions of [Ronald] Field's armed robbery and felonious assault.

## III.  Facts

The material facts leading to petitioner's conviction are recited verbatim from the

Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct

on habeas review pursuant to 28 U.S.C. § 2254(e)(1).  See Wagner v. Smith, 581 F.3d

410, 413 (6th Cir. 2009):

> On the evening of December 9, 2005, Ronald Fields, Robin Gallagher, Brian Curry, and Kathryn Sawinski gathered at a house in Hamtramck where Fields and Gallagher each rented rooms.  They stayed up all night playing cards and using drugs.  At about noon on December 10, 2005, Fields and Gallagher left the house to buy crack cocaine and some convenience items. Gallagher testified that they purchased $30 worth of crack cocaine.  Curry

and Sawinski stayed at the house.  When Fields and Gallagher were gone, defendants Blount and Hudson arrived at the house.  They entered without permission and began searching the bedrooms.  When Sawinski confronted Hudson, he yelled at her and ordered her into Fields' room.  Hudson then entered the room, hit Sawinski in the face, and took $21 from Curry's pockets.  Blount and Hudson told Sawinski and Curry that Gallagher owed them money.  They threatened to harm Curry and Sawinski if Gallagher did not have the money when she returned.

When Fields and Gallagher returned, Blount and Hudson demanded money. Apparently, Gallagher entered Fields' bedroom, followed by both Blount and Hudson.  Fields stood near the doorway between his bedroom and the kitchen.  Hudson and Gallagher began arguing and Hudson hit Gallagher in the face.  Hudson also grabbed Fields by the throat and punched him in the face.  Blount and Hudson went through Fields's pockets looking for money and Blount took the crack cocaine that Fields had just purchased.  At this time, Hudson and Blount had a steel pipe, which they apparently passed back and forth to brandish.

Vivoda arrived at the house at some point after Blount and Hudson arrived. When Vivoda arrived, she also threatened a "blood bath" if someone did not come up with the money that Gallagher allegedly owed Blount. [1]  Blount wanted Gallagher to call her payee and get the money.  Because there was no telephone in the house, Blount took Fields's truck keys and drove Gallagher to a pay telephone.

At the pay telephone, Gallagher stopped a police car and told the officers about the assault.  When Blount and Gallagher were gone, Vivoda and Hudson continued to threaten the remaining victims and to beat Fields with the pipe.  When Vivoda noticed the police car arrive, she and Hudson left the house. Blount had walked back to the house after the police stopped him. The other victims confirmed Gallagher's story, and the police stopped and arrested all three defendants soon thereafter.

People v. Vivoda, No. 271292, Slip. Op. at * 2-3.

## IV.  Analysis

---

[1]  A payee had been appointed to handle Gallagher's financial affairs after she began receiving SSI benefits because her drug use affected her ability to pay her bills. Gallagher testified that she had planned to rent a place from Blount, but changed her mind and instructed her payee not to give Blount the $300 in rent money. (Footnote original).

**A. Standard of Review**

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim–
>> (1)    resulted in a decision that was contrary to, or involved an
>> unreasonable application of, clearly established Federal law, as
>> determined by the Supreme Court of the United States; or
>> (2)    resulted in a decision that was based on an unreasonable
>> determination of the facts in light of the evidence presented in the State
>> court proceeding.

28 U.S.C. §2254(d); Harpster v. State of Ohio, 128 F. 3d 322, 326 (6th Cir. 1997).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. An "unreasonable application" occurs when the state court identifies the correct legal principle from a Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411.

**B. Sufficiency of the Evidence**

1.

Petitioner contends that there was insufficient evidence to support her armed robbery and felonious assault convictions involving Ronald Fields, arguing that at best the evidence showed petitioner was merely present during the commission of these

offenses.

The Michigan Court of Appeals rejected petitioner's claim as follows:

### A. Armed Robbery

First, Vivoda challenges her armed robbery conviction.  She argues that the evidence presented at trial indicated that she was not inside the house when Blount stole the crack cocaine from Fields and, therefore, she should not have been convicted of armed robbery on the basis of that taking.  We disagree.

As discussed earlier, the prosecution presented sufficient evidence to establish that Blount committed armed robbery of Fields, and defendants do not challenge Hudson's armed robbery conviction.  Vivoda, who was Blount's girlfriend, arrived at the house shortly after Blount and Hudson.  Gallagher stated that when Vivoda entered the house, she said that they "were screaming too loud" and that she could hear them "all the way down the street."  Further, when Vivoda arrived, she joined Hudson and Blount in threatening the victims and demanding money.

In light of the evidence that Vivoda was close enough to hear what was happening inside the house, expressed her concern that Blount and Hudson were too loud when she entered, and joined the other defendants in making threats and demanding money immediately after her arrival, the jury could reasonably infer that she was involved in this wrongful conduct from the beginning.  Specifically, the jury could infer that Vivoda acted as a lookout when Blount and Hudson initially entered the house and entered the house to warn Blount and Hudson that they were too loud and the commotion might attract unwanted attention.  Her actions demonstrated that she had prior knowledge of Blount's and Hudson's felonious intent and shared that intent.  Thus, viewed in a light most favorable to the prosecution, the evidence was sufficient to enable the jury to find that Vivoda aided and assisted Blount and Hudson when Fields was robbed, and that the robbery of Fields was a natural and probable consequence of defendants' intended procurement of money through the use of threats of violence.  Accordingly, the prosecution presented sufficient evidence to support Vivoda's armed robbery conviction.

### B. Felonious Assault

Vivoda also challenges her conviction for felonious assault of Fields, claiming that she did not threaten Fields, give Hudson the pipe, or assist in beating Fields. We disagree.  "The elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or

place the victim in reasonable apprehension of an immediate battery." The prosecution presented sufficient evidence to support her felonious assault conviction under an aiding and abetting theory.

Sawinski testified that Hudson said he was going to "f-k up" Fields and do the same to Gallagher when she returned to the rooming house. Fields testified that Hudson repeatedly threatened him and poked him with the pipe. Vivoda was in the room at the time. Also, testimony showed that Vivoda actively participated in threatening the victims with violence if they did not produce the money; in particular, she threatened Fields, Curry, and Sawinski just before Fields was assaulted. She also assaulted Gallagher on separate occasions with a pipe and a crutch before Gallagher left with Blount. Based on this evidence, the jury could reasonably infer that Vivoda's statements and actions indicated her support for Fields's assault and her willingness to assist in the violence if necessary. Vivoda argues that because Hudson beat Fields only after he "mouthed off," Hudson's assault was an independent act. However, the evidence indicates that Vivoda was aware of Hudson's intent to assault Fields and aided and abetted him in the commission of that offense. Accordingly, Vivoda's felonious assault conviction is supported by sufficient evidence.

Vivoda, Slip. Op. at * 11-12(internal citations omitted).

2.

A habeas court reviews claims that the evidence at trial was insufficient for a conviction by asking whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Scott v. Mitchell, 209 F. 3d 854, 885 (6th Cir. 2000)(citing to Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Moreover, in reviewing a state court's application of the Jackson standard, a federal habeas court is required to determine whether the state court's application of the law in reviewing a sufficiency of evidence claim was reasonable. See Tucker v. Palmer, 541 F. 3d 652, 666 (6th Cir. 2008); cert. den. 130  S. Ct.109 (2009)(citing 28 U.S.C. § 2254(d)(1)). A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses

whose demeanor has been observed by the trial court.  Marshall v. Lonberger, 459

U.S. 422, 434 (1983).  On a state prisoner's habeas petition challenging the

insufficiency of the evidence, a federal district court must draw all available inferences

and resolve all credibility issues in favor of the jury's verdict.  See Spalla v. Foltz, 615

F. Supp. 224, 227 (E.D. Mich. 1985).

The elements of armed robbery under Michigan law are: (1) an assault, and (2)

a felonious taking of property from the victim's presence or person, (3) while the

defendant is armed with a weapon described in the statute.  See Lovely v. Jackson,

337 F. Supp. 2d 969, 977 (E.D. Mich. 2004)(citing Mich. Comp. Laws § 750.529;

People v. Allen, 201 Mich. App. 98, 100 (1993)).

Under Michigan law, the elements of assault with a dangerous weapon are: (1)

an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the

victim in reasonable apprehension of an immediate battery.  See Gardner v. Kapture,

261 F. Supp. 2d 793, 804 (E.D. Mich. 2003)(citing People v. Lawton, 196 Mich.App.

341, 349 (1992)).

Petitioner was convicted under a theory of aiding and abetting.  To support a

finding under Michigan law that a defendant aided and abetted in the commission of a

crime, the prosecutor must show that:

> 1. the crime charged was committed by the defendant or some other person;
> 2. the defendant performed acts or gave encouragement that assisted the commission of the crime; and
> 3. the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement.

Riley v. Berghuis, 481 F. 3d 315, 322 (6th Cir. 2007)(citing People v. Carines, 460 Mich.

750, 757-58 (1999)).

In order to be guilty of aiding and abetting under Michigan law, the accused must take some conscious action designed to make the criminal venture succeed. Fuller v. Anderson, 662 F. 2d 420, 424 (6th Cir. 1981). Aiding and abetting describes all forms of assistance rendered to the perpetrator of the crime and comprehends all words or deeds which might support, encourage, or incite the commission of the crime. People v. Turner, 213 Mich. App. 558, 568; 540 N. W. 2d 728 (1995).

To be convicted of aiding and abetting, the defendant must either possess the required intent to commit the crime or have participated while knowing that the principal had the requisite intent; such intent may be inferred from circumstantial evidence. Long v. Stovall, 450 F. Supp. 2d 746, 753 (E.D. Mich. 2006). The intent of an aider and abettor is satisfied by proof that he knew the principal's intent when he gave aid or assistance to the principal. People v. McCray, 210 Mich. App. 9, 14; 533 N. W. 2d 359 (1995).

3.

Petitioner is correct that a defendant's mere presence, even with knowledge that a crime is being committed, is insufficient to establish that a defendant aided and abetted in the commission of the offense. People v. Norris, 236 Mich. App. 411, 419-20 (1999). However, a claim of mere presence is not a "catch-all excuse" to defeat an inference of guilt beyond a reasonable doubt. In evaluating a "mere presence" defense, a factfinder must distinguish, based upon the totality of the circumstances, between one who is merely present at the scene and one who is present with criminal culpability. An aider and abettor who is intentionally present during the commission of

a crime may be silent during the crime's commission, "but by his demeanor, or through behavior and acts not directly related to the crime, provide 'moral support' that is recognizable to, and relied upon by, the principal.  Such acts may be silent and may not be overt but may still amount to more than 'mere' presence."  Sanford v. Yukins, 288 F. 3d 855, 862 (6th Cir. 2002)

Here, the prosecutor presented sufficient evidence from which a rational trier of fact could have concluded beyond a reasonable doubt that petitioner aided and abetted in the armed robbery and felonious assault of Ronald Fields.  Petitioner was the girlfriend of co-defendant Blount.  Petitioner arrived at the house shortly after Blount and Hudson.  Gallagher testified that when petitioner entered the house, she complained that they "were screaming too loud" and that she could hear the occupants of the house "all the way down the street."  Further, when Vivoda arrived, she joined Hudson and Blount in threatening the victims with violence if they did not produce the money.  Fields testified that Hudson repeatedly threatened him and poked him with a pipe, while petitioner was present in the room.  There was also testimony that petitioner threatened Fields, Curry, and Sawinski just before Fields was assaulted.  Petitioner also assaulted Gallagher on separate occasions with a pipe and a crutch before Gallagher left with Blount.

In light of this evidence, the jury could reasonably infer that petitioner was involved in the armed robbery and felonious assault of Ronald Fields from the beginning.  In particular, the jury could infer that petitioner was acting as a lookout for her co-defendants when they initially entered the house and that she entered the house to warn Blount and Hudson that they were too loud and that the noise might

9

attract unwanted attention.  Petitioner's role as a lookout while her two co-defendants went inside to rob and assault Ronald Fields would be sufficient evidence under Michigan law to support petitioner's convictions under an aiding and abetting theory. Moreover, Ronald Fields testified that petitioner "was walking around like she was the ring leader telling us what's going to happen if we don't come up with the money." (Tr. 5/10/2006, p. 40).  Fields elaborated that petitioner appeared to be the ringleader because "[S]he was calling the shots telling us you're going to do this, you're going to do that or there's going to be a blood bath up in there."  Id. at p. 41.  Petitioner's intent to aid and abet in the armed robbery and the felonious assault can be inferred by the fact that she appeared to direct the course of the events during and after the assault.

In addition, there was evidence that petitioner and Hudson attempted to flee the house after petitioner discovered that the police were outside.  Petitioner's attempted flight from the scene establishes her active involvement in these offenses, so as to defeat her mere presence argument.  Finally, common sense would indicate that the other co-defendants would not have permitted a "noncontributing interloper" to remain with them inside of this house "while their conspicuous criminal conduct continued unabated."  See United States v. Batista-Polanco, 927 F. 2d 14, 18 (1st Cir. 1991).

In light of the above, the Michigan Court of Appeals' rejection of petitioner's mere presence claim was not an unreasonable application of clearly established federal law, so as to entitle her to habeas relief.

## C.  Petitioner's Reply

In her reply, petitioner for the first time appears to be raising additional claims that were not raised in her initial habeas petition, nor raised in her appeal before the Michigan appellate courts.  A traverse or reply to an answer to a petition for writ of habeas corpus is not the proper pleading for a habeas petitioner to raise additional grounds for relief.  Burns v. Lafler, 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004).  "[A] court cannot consider new issues raised in a traverse or reply to the State's answer." Id.  Because these claims are being presented for the first time in petitioner's reply brief, rather than in her habeas petition, this Court declines to address these claims, because they are not properly before this Court.  See Murphy v. Ohio, 551 F. 3d 485, 502 (6th Cir. 2009); cert. den. 130 S. Ct. 397 (2009)

### D.  A Certificate of Appealability

The Court must now determine whether to issue a certificate of appealability at the time of its decision.  See Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254 (eff. December 1, 2009).  In order to obtain a certificate of appealability, Petitioner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further.  Slack v. McDaniel, 529 U.S. 473, 483-84 (2000). Where, as here, a district court rejects a habeas petitioner's constitutional claims on the merits, Petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong.  Id. at 484.

For the reasons stated in this memorandum, petitioner is not entitled to a

certificate of appealability because he has failed to make a substantial showing of the

denial of a federal constitutional right on any of his claims.  Reasonable jurists would

not debate this conclusion..

### V.  Conclusion

For the reasons stated above, the petition for a writ of habeas corpus is

**DENIED.**  A certificate of appealability is also **DENIED.**

This case is **DISMISSED.**

**SO ORDERED.**


 s/ Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE


Dated:  February 2, 2010


I hereby certify that a copy of the foregoing document was mailed Crystal Vivoda,
606613, Huron Valley Complex - Women's, 3511 Bemis Road, Ypsilanti, MI 48197 and
to the attorneys of record on this date, February 2, 2010, by electronic and/or ordinary
mail.


 s/ Julie Owens
Case Manager, (313) 234-5160